IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | CRIMINAL NO. 4:08cr16 |
| | ) | |
| CATHERINA ROSE VOSS, | ) | |
| | ) | |
| MICHAEL ANTHONY ERIC DRAVEN, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DAVID ANTHONY RUNYON, | ) | |
| | ) | |
| Defendants. | ) | |

# DEFENDANT'S MOTION TO CONTINUE TRIAL DATE

**COMES NOW** Defendant, by and through his appointed counsel, hereby requests this Honorable Court enter an Order continuing the trial of this case.

## I. Introduction

Capital cases are difficult no matter what - we recognize the need to move forward but despite our best efforts to date, as detailed below, we cannot provide competent representation under the current scheduling order. The necessary investigation, discovery and defense scientific testing cannot be accomplished without additional time.

To assist the Court and government counsel in appreciating the critical need for this continuance and to demonstrate that this request is not the

result of procrastination by defense counsel, this motion will outline numerous stumbling blocks to a June 30, 2009, trial date and the general areas in which extensive work remains to be accomplished.

**II. Governing Legal Principles**

The Sixth Amendment entitles a criminal defendant to more than mere legal representation; an accused has the right to the effective assistance of competent counsel. **Powell v. Alabama**, 287 U.S. 45, 58, (1932). In order to fulfill that Constitutional guarantee and render effective assistance of counsel, counsel must be given adequate time to prepare for a case. **See Powell v. Alabama**, 287 U.S. 45, 71 (1932) (inadequate case preparation can jeopardize an accused's right to effective assistance of counsel). While "the Constitution nowhere specifies any period which must intervene between the required appointment of counsel and trial, the denial of adequate time for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel." **Avery v. Alabama,** 308 U.S. 444, 446 (1940). "The prompt disposition of criminal cases is to be commended and encouraged. But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense." **Powell v. Alabama**, 287 U.S. at 59. Obtaining adequate time to properly prepare for representing a person facing death is essential.

Defense counsel face difficult and time-consuming tasks in capital cases, especially in light of the fact that they operate without the resources available to the government. When a person's life is at stake counsel are required to exhaustively explore every factual and legal aspect of the

"defendant's character... and any of the circumstances of the offense..." **Lockett v. Ohio,** 438 U.S. 586, 604 (1978), preparing in effect for two trials. Moreover, a capital trial is different from all other cases, not just by degree, but by kind.

The American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (Rev. ed. 2003) established the expectations of the profession concerning the obligations of counsel in capital cases. If particular Guideline 10.7 states:

A. Counsel at every stage have an obligation to conduct thorough and independent investigations relating to the issues of both guilt and penalty.

1. The investigation regarding guilt should be conducted regardless of any admission or statement by the client concerning the facts of the alleged crime, or overwhelming evidence of guilt, or any statement by the client that evidence bearing upon guilt is not to be collected or presented.

2. The investigation regarding penalty should be conducted regardless of any statement by the client that evidence bearing upon penalty is not to be collected or presented.

The United States Supreme Court has also been clear about the duties of capital case counsel to conduct a thorough investigation. ***See e.g., Rompilla v. Beard,*** __ U.S. __, 125, S. Ct. 2456 (2005)(even when a capital defendant and his family members have suggested that no mitigating evidence is available, his lawyer is bound to make reasonable efforts to obtain and review material that counsel knows the prosecution will probably rely on as evidence of aggravation at the trial's sentencing phase); ***Wiggins v. Taylor***, 529 U.S. 362, 395-96 (2000) (counsel ineffective for failing to

uncover and present evidence of defendant's "nightmarish childhood," borderline mental retardation, and good conduct in prison).

Following the requirements of a complete and thorough investigation established in **Wiggins**, the United States Court of Appeals for the Eighth Circuit in **White v. Roper**, 416 F. 3d 728 (8th Cir. 2005), reversed a death penalty sentence when the defense counsel failed to conduct a complete investigation and identify and call as a witness an individual who would have provided strong testimony of mistaken identity. The Court stated the "presumption of sound trial strategy founders....on the rocks of ignorance, as in **Wiggins v. Smith**, 539 U.S. 510, 527-28 (2003)." **Id.** at 732. Other Circuits agree, and have reversed for failure to conduct an adequate investigation. **See, e.g. Coleman v. Mitchell**, 268 F.3d 417, 449-51 (6th Cir. 2001) (though counsel's duty to investigate mitigating evidence is well established, counsel failed to investigate and present evidence that defendant had been abandoned as an infant in a garbage can by his mentally ill mother, was raised in a brothel run by his grandmother where he was exposed to group sex, bestiality and pedophilia, and suffered from probable brain damage and borderline personality disorder); **Jermyn v. Horn**, 266 F. 3d 257, 307-08 (3d Cir. 2001) (counsel ineffective for failing to investigate and present evidence of defendant's abusive childhood and "psychiatric testimony

-4-

explaining how Jermyn's development was thwarted by the torture and psychological abuse he suffered as a child"); ***Caro v. Woodford,*** 280 F. 3d 1247, 1255 (9th Cir. 2002), ***cert. denied***, 122 S. Ct. 2645 (2002) (counsel ineffective for failing to investigate and present evidence of client's brain damage due to prolonged pesticide exposure and repeated head injuries, and failing to present testimony explaining "the effects of the severe physical, emotional, and psychological abuse to which Caro was subjected as a child").

Here, counsel have tried to be diligent in attempting to fulfill their responsibilities as outlined by the ABA, standards which the United States Supreme Court "long…[has] referred as 'guides to determining what is reasonable.'" ***Wiggins v. Smith***, 123 S.Ct. 2527, 2537 (2003). These Guidelines upgrade the minimum standard from "quality" legal representation to "high quality" legal representation. ***See, American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases,*** 31 ***Hofstra L. Rev.*** 913, 939 (2003) (outlining the 2003 revisions to the Guidelines). Included in the guidelines is the requirement that the capital defendant "receive the assistance of all expert, investigative, and other ancillary professional services…appropriate…at all sates of the proceeding." ***Id.*** at 952.

Capital cases are fundamentally different than any other criminal case, not only in the severity of the potential penalty but in the nature of the evidence and information which must be developed.  Sensitive facts need to be disclosed to members of the defense team who are essentially strangers to the defendant.  This takes months.

In the community for ABA Guideline 6.1 at page 967 it states that:

> studies have consistently found that defending capital cases takes vastly more time and effort by counsel than non-capital matters.  One study found that defense attorneys in federal capital cases bill for over twelve times as many hours as non-capital homicide cases. Recent studies indicate that several thousand hours are typically required to provide appropriate representation.

ABA Guideline 10.7 which deals with the investigation required in defense of a capital case states that:

> counsel at every stage have an obligation to conduct thorough and independent investigations relating to both guilt and penalty.

The commentary for guideline 10.7 elaborates on the requirements of investigation to include, ..."intergenerational medical records, employment records, educational history, military service, family history and social history".Then evaluation by relevant experts must follow.  It is an incrementally slow process.

> [R]ecently, in **Wiggins v. Smith**, [539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (1993)] the Court declared that counsel's failure to fully investigate Wiggins' background and present mitigating evidence of his unfortunate 'excruciating life history' violated his Sixth Amendment right to counsel. The Court, citing **Williams v. Taylor**, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) and its language on prevailing norms for thorough penalty phase investigation, including those reflected in ABA standards and guidelines, found that counsel's actions could not be construed as strategic as counsel had failed to conduct a thorough social history investigation. The actions of counsel could not, according to the Court, be deemed reasonable as facts known to counsel at the time would have led "a reasonable attorney to investigate further."
>
> These decisions clarify the responsibilities of counsel in a capital case, particularly as it relates to preparation for and presentation in the penalty phase. In addition to the usual requirements for trying a difficult homicide case, counsel in a capital case is required, pursuant to the revised Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, to thoroughly investigate the background and circumstances of the client in order to prepare a case for the penalty phase. Given the severity and irrevocability of a death sentence, extraordinary obligations are properly placed on counsel to prepare and try such a case.

J. Miller, **The Defense Team in Capital Cases, 31 Hofstra L. Rev.** 1117, 1119-1120 (2003)

Without adequate time to develop the relationship of trust required for effective representation in a capital case, counsel may never learn or be able to present the most crucial facts about the defendant, facts without which any possible understanding of his actions is impossible.

In **Ungar v. Sarafite**, 378 U.S. 575 (1964) the Supreme Court explained:

> "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. **Avery v. Alabama**, 308 U.S. 444. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. **Chandler v. Fretag**, 348 U.S. 3. There is no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. **Nilva v. United States**, 352 U.S. 385; **Torres v. United States**, 270 F. 2d 252 (C.A. 9th Cir.); **cf. United States v. Arlen,** 252 F. 2d 491 (C.A. 2d Cir.)."

**Sarafite**, 378 U.S. 598-90.

Consistent with the Supreme Court's decision in **Sarafite**, other federal courts have held that the denial of a motion for continuance raises constitutional concerns "if there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." **United States v. Gallo**, 763 F. 2d 1504, 1523 (6th Cir. 1985) (citation omitted), **cert. denied,** 474 U.S. 1068 (1986). **See, e.g., United States v. King**, 664 F 2d 1171, 1173 (10th Cir. 1981); **United States v. Verderame.** 51 F.3d 249 (11th Cir. 1995); **see also, United States v. Poston**, 902 F. 2d 90, 96 (D.C. Cir. 1990) (denial of a continuance to allow new counsel to prepare implicates the Sixth Amendment right to counsel).

Here, undersigned are of the firm belief that to require the defendant to proceed to trial on June 30, 2009, will deprive the defendant of his constitutional right to the effective assistance of counsel as mandated by both the Constitution of the United States and the pronouncements of the Supreme Court of the United States regarding representation in capital cases.

III. **The Defendant Requests an Order Continuing This Case**

Given these obligations and duties, we are bound to request more time because our failure to secure adequate time to perform the minimally required functions of counsel would result in providing ineffective counsel. Therefore, we respectfully request that the Court take note that we cannot be adequately prepared to try this case on June 30, 2009, and continue the matter out six (6) months to an appropriate date in October.

IV. **Factual Background**

David Runyon was arrested on state charges in West Virginia on December 12, 2007. He was indicted on federal charges on February 13, 2008. Defendant Runyon received notice that the United States would seek the death penalty in July, 2008. The case was set for trial on March 13, 2009, and counsel diligently set out investigating and preparing the matter for trial. Defendant was represented by Lawrence Woodward

and Jon Babineau. Counsel decided to divide the labor so that Woodward would have primary responsibility for the guilt/innocence phase and Babineau would be primarily responsible for the penalty phase.

A mitigation expert and investigator were retained to assist in preparation. Investigation into Defendant Runyon's past was difficult from the beginning. At the time of the alleged crime he was living in a trailer park in Morgantown, West Virginia. He had absolutely no ties to the local community and none of the potential mitigation evidence/witnesses was in this area.

Runyon's mother and adoptive father live in Richland, Missouri. His mother, Suk Cha Runyon is a refugee from the Korean War who found her way out of North Korea through some remarkable circumstances, married an American serviceman and came to the United States. She had a difficult pregnancy with David and she and David suffered physical and emotional abuse at the hands of her husband, David's father. She divorced this man and later married another serviceman who adopted David.

David spent his whole juvenile life as a military dependant which caused him to have to relocate frequently. He lived in Texas two different times, Panama, Germany, Missouri, Korea and Fort Belvoir, Virginia. Of

course this means his school and medical records are spread far and wide and people with whom he was associated during his formative years are likewise spread out, difficult to locate and inconvenient and expensive to contact and interview.

After high school David Runyon went to Wentworth Military Academy in Missouri. After graduation he moved to Wichita, Kansas, where he held several different jobs including being a member of the National Guard. He joined the army, met and married his wife, Maria and they moved with the army to Ft. Lee, Virginia, for a short time. From there he was ordered to Ft. Benning, Georgia.

When he left the army he took some law enforcement classes and was on the Fayetteville Police Department for a short period. In 1998, he moved back to Wichita, Kansas, where he held several jobs until 2001 when he moved to Missouri where he held several jobs. In 2003, he moved to Morgantown, West Virginia, where he lived until the time of his arrest.

From this brief listing of the locations where David Runyon has lived it is easy to see that this is not the typical case as far as investigating possible mitigating evidence for the penalty phase of the trial.

Attached hereto as exhibit "1"[1] is the current status of the identified records that have been requested. Of particular concern is the lack of any medical records for defendant and his mother. Also not yet received are the military records of defendant's birth father which should contain information about the physical abuse of defendant and his mother. These records are absolutely necessary before defense experts on mental health can perform testing and render opinions.

Attached as exhibit "2"[2] is a list with the current status of contact with known possible mitigation witnesses. Because of the distance all of these witnesses are from the Tidewater area, investigation of their location has taken time and is continuing.

**V.      Conflict of Babineau**

Very late in the case Counsel Babineau developed a conflict when a co-defendant in this case was placed in proximity to a client Babineau represented who was unrelated to this matter. The co-defendant talked to Babineau's client about this case. Babineau's client told him of the situation and Babineau immediately requested the two be separated. Unfortunately it took some time for that to occur and Babineau had a

---

[1] Ex parte motion, ex parte order, and exhibit "1" submitted under seal

[2] Ex parte motion, ex parte order, and exhibit "2" submitted under seal

conflict which caused him to request to be relieved in this case. That occurred on February 13, 2009. Stephen Hudgins was appointed to replace Babineau on February 18, 2009.

At that point the case was scheduled for trial on March 13, 2009. Of course, Hudgins could not be prepared to try the case in less than a month but, the case could not have gone forward on that date even if Babineau had not developed the conflict. The mitigation investigation for the penalty phase was not complete and still is not complete at this time.

**VI  Current Status of Mitigation Investigation**

Counsel, the mitigation expert and the investigator have been and continue to diligently prepare this matter for trial. Unfortunately several factors cause this to be a very difficult process. The first factor is that the necessary medical records are in the possession of the United States Army or some other branch of the government which makes their timely acquisition impossible. The second factor is the remoteness of all mitigation witnesses and documentation not in possession of the government. Both of these factors are beyond anyone's control and we must just deal with them in the best way we can.

The reality is that it will take more time to investigation and prepare this case. If adequate time is not given, Runyon will not receive the

effective assistance of counsel.  If the case proceeds to trial on June 30, 2009 that will be the case.

## **Conclusion**

This request for a continuance of the trial date is not the result of procrastination or a desire for delay on the part of the defense, but for the simple fact that additional time is required in order to insure that defendant receives the effective assistance of competent counsel, as mandated by the Sixth Amendment to the United States Constitution. ***See e.g. Powell v. Alabama***, 287 U.S. 45, 58, (1932).

The fundamental concern that drives this request for a resetting of the trial date is the need to provide David Runyon with the degree of legal representation to which he is entitled under our system of law.  That concern is grounded on the proposition that David Runyon must be provided a fair and just trial.  That can only occur if the present trial date is rescheduled and the defense is given a reasonable and adequate time in which to prepare.

In accordance with ***Title 18, United States Code,*** defendant submits the above stated reasons for this continuance request outweigh the interests of the public and the defendant to a speedy trial under ***Title 18, United States Code § 3161 ( c) (1).***

WHEREFORE, for the above stated reasons defendant respectfully requests this Honorable Court grant his request for continuance and continue the trial of this case until October of 2009.

          DAVID ANTHONY RUNYON

          By: /s/
          Stephen A. Hudgins, Esquire
          VSB No. 20315
          Counsel for David Anthony Runyon
          Cope & Olson, P.L.C.
          11836 Canon Blvd., Suite 100
          Newport News, VA 23606
          Telephone: 757.596.0316
          Telefax: 757.596.5320
          shudgins@com.hrcoxmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of April, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Brian J. Samuels, Esquire
VSB No. 65898
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone: 757.591.4000
Telefax: 757.591.0866
brian.samuels@usdoj.gov

Lisa R. McKeel, Esquire
VSB No. 28652
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone: 757.591.4000
Telefax: 757.591.0866
lisa.mckeel@usdoj.gov

Lawrence Hunter Woodward, Jr., Esquire
Shuttleworth, Ruloff, Swain, Haddad & Morecock, P.C.
Counsel for David Anthony Runyon
4525 South Boulevard, Suite 300
Virginia Beach VA 23452
Telephone: 757.671.6047
Telefax: 757.671.6004
lwoodward@srgslaw.com

Larry M. Dash, Esquire
Office of the Federal Public Defender
Counsel for Catherina Rose Voss
150 Boush Street, Suite 403
Norfolk, VA 23510
larrydash@fd.org

Paul G. Gill, Esquire
Office of the Federal Public Defender
Counsel for Catherina Rose Voss
830 E. Main Street, Suite 1100
Richmond, VA 23219
paulgill@fd.org

Jeffrey A. Swartz, Esquire
Rabinowitz, Swartz, Taliaferro, Swartz & Goodove
Counsel for Catherina Rose Voss
150 Boush Street, Suite 800
Norfolk, VA 23510
jswartz@rstsg.com

James S. Ellenson, Esquire
Law Office of James Stephen Ellenson
Counsel for Michael Anthony Eric Draven
Bank of America Building
2600 Washington Avenue, Suite 1000
Newport News, VA 23607
jseatty@aol.com

Timothy G. Clancy, Esquire
Moschel & Clancy, PLLC
Counsel for Michael Anthony Eric Draven
2101 Executive Drive, Third Floor
Tower Box 78
Hampton VA 23666
tclancy@moschelandclancy.com

_____/s/_____
Stephen A. Hudgins, Esquire
VSB No. 20315
Counsel for David Anthony Runyon
Cope & Olson, P.L.C.
11836 Canon Blvd., Suite 100
Newport News, VA 23606
Telephone: 757.596.0316
Telefax: 757.596.5320
shudgins@com.hrcoxmail.com