UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA,

v.                                              Criminal No. 4:08cr16

MICHAEL ANTHONY ERIC DRAVEN

   and

DAVID ANTHONY RUNYON,

   Defendants.

### ORDER

This matter comes before the court on two pending motions: (1) defendant David Anthony Runyon's Motion to Continue Trial Date; and (2) the United States' Motion to Sever Trial.

### I. Motion to Continue

On April 13, 2009, counsel for defendant David Anthony Runyon ("Runyon") moved the court to continue the trial in this case. Defendant Michael Anthony Eric Draven ("Draven") responded to the motion on April 17, 2009, and noted no objection. On April 21, 2009, the United States filed a response indicating that, as to Runyon, it did not object to a continuance, but that it did object to continuing Draven's trial date. That same day the United States filed a motion to sever the trials of Draven and Runyon.[1]

---

[1] The government's Motion to Sever is discussed below. See infra Part II.

A.  **Defendant Runyon's Position**

On behalf of Runyon, defense counsel Lawrence H. Woodward, Jr. ("Woodward") and Stephen A. Hudgins ("Hudgins") move the court to continue trial in this matter for several months. Counsel seek additional time to complete "necessary investigation, discovery and defense scientific testing . . ." (Mot. to Continue 1.) Notably, counsel's argument, and the exhibits submitted in support of their motion,[2] focus entirely on appropriate preparation for the penalty phases of this trial, not the guilt/innocence phase.[3]

As explained in their motion, defense counsel have divided the labor in this case. Woodward, who has represented Runyon since March 3, 2008, bears "primary responsibility for the guilt/innocence phase of the trial." (Id. 10.) Hudgins is primarily responsible for the penalty phases, as was his predecessor Jon M. Babineau.[4] Defense

---

[2] Counsel submitted two ex parte exhibits in support of their motion to continue. The court granted counsel's motion to seal these exhibits on April 28, 2009.

[3] As explained in the court's December 9, 2008, Order, trial in this matter will proceed in three phases. In the first phase ("merits" or "guilt/innocence" phase), the jury will deliberate on the defendants' guilt or innocence of the charged offenses. Should defendant Runyon be found guilty, a second phase ("eligibility" phase), will be held wherein the jury will determine whether the government has proven, beyond a reasonable doubt, the mental state factors and the statutory aggravating factors required to impose the death penalty. Finally, in the third ("selection" phase), the jury will decide on the nonstatutory aggravating factors and the mitigating factors, undertake the process of weighing these factors, and determine the appropriate sentence.

[4] Mr. Hudgins was appointed to represent defendant Runyon on February 18, 2009, after attorney Jon M. Babineau ("Babineau"),

2

counsel assert that "the mitigation investigation for the penalty phase[s]" is not complete, and that counsel require additional time to investigate and prepare. (Id. 13.) In support of their request, counsel aver that Runyon has lived in varied locales, making it difficult to contact and interview mitigation witnesses. Additionally, both Runyon and his biological father were members of the armed forces. As such, the United States government has many relevant medical and military records, and the defense team has had difficulty obtaining them in a timely manner. (Id. 12.)

Counsel never claim that more time is needed to prepare for the guilt/innocence phase of trial, but rather boldly assert that they will require six additional months from the current trial date of June 30, 2009, to perform the "minimally required functions of counsel." (Id. 9.)[5] No reasons are then given other than the need

---

appointed March 4, 2008, developed a conflict of interest. However, Babineau had performed and billed for considerable time and services relating to the penalty phases of this trial prior to any conflict of interest and withdrawal as Runyon's counsel. When Babineau withdrew, he had been paid for considerable legal services, in addition to significant payments having been made for various investigative and expert services on behalf of Runyon, relating to the penalty phases of the proceedings. All payments, and supporting documentation, are a matter of record in this case and are subject to disclosure under the provisions of 18 U.S.C. § 3006A(d)(4). All of Babineau's research and legal work was shared throughout with co-counsel Woodward, and then passed on to Hudgins.

[5] Such an assertion defies the record of the legal and investigative services itemized and claimed to have been rendered to date, and which have been carefully reviewed by the court before reimbursement was authorized by court order. See supra note 4 and infra note 10 and accompanying text.

for more preparation of the mitigation evidence for the penalty phases. (Id. 10-13.) "The mitigation investigation for the penalty phase was not complete [on Babineau's withdrawal] and still is not complete at this time." (Id.) Defense counsel then conclude that a continuance is necessary in order that they be "given a reasonable and adequate time in which to prepare." (Id. 14.) All of the reasons given preceding this conclusion relate to preparation for the penalty phases.[6]

### B. Position of Defendant Draven and the United States

Draven does not object a continuance, nor does the United States with respect to the trial of defendant Runyon. The United States does, however, object to continuing the trial date for defendant Draven, because Draven's case "does not present the same readiness issues in terms of mitigation evidence as does the case against

---

[6] The reasons detail the widespread locations for witnesses and records, and the difficulties attendant thereto in accessing them. Specifically, counsel assert that at the time of the alleged crime, Runyon was living in a trailer park in West Virginia, a community to which he had no ties, and where "none of the potential mitigation evidence/witnesses was" located. (Mot. to Continue 10.) Further, counsel note that Runyon was raised in a military family and lived across the globe, making location of pertinent records and interview of mitigation witnesses difficult. (Id. 11.) Counsel also explain that, in Runyon's adult life, he has lived and worked in many locations across the United States. (Id.) From the wide range of places Runyon has lived and worked, counsel assert that "this is not the typical case as far as investigating possible mitigating evidence for the penalty phase[s] of the trial" (Id.) and that the difficulty obtaining pertinent government records, (Id. 12), combined with the "remoteness" of other mitigation witnesses and documentation, have rendered the mitigation investigation a "very difficult process." (Id. 13.)

4

defendant Runyon" for purposes of any potential penalty phases.[7] (U.S. Response 2.) As such, the United States has moved to sever the two cases. See infra Part II.

### C. Law and Analysis

Trial courts are granted "broad discretion" on matters of continuances and "only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." Morris v. Slappy, 461 U.S. 1, 11-12 (internal quotation marks and citation omitted). There are "no mechanical tests" a trial court must employ when deciding whether continuance is appropriate, rather "[t]he answer must be found in the circumstances present . . . particularly in the reasons presented to the trial judge at the time the request" is made. Ungar v. Sarafite, 376 U.S. 575, 589 (1964). The difficulty inherent in scheduling trials places a burden on trial judges that, "except for compelling reasons," counsels against continuances. Morris, 461 U.S. at 12; see also United States v. Hutchison, 352 F.2d 404, 405 (4th Cir. 1965) (granting a continuance is a matter within the sound discretion of trial judge; reasonable latitude must be

---

[7] As the United States has not sought the death penalty for defendant Draven, he will not be sentenced pursuant to the procedures outlined in the Federal Death Penalty Act. 18 U.S.C. § 3593(b) (outlining procedures for sentencing hearing of defendants for whom the United States has noticed its intent to seek the death penalty). Thus, no penalty phase hearings are required and, if Draven is found guilty, he will be sentenced by the court.

allowed).

Defense counsel assert that Runyon's Sixth Amendment right to counsel will be violated unless they have more time to prepare. "Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise prepare for trial violates a defendant's Sixth Amendment right to counsel." Morris, 461 U.S. at 12. Even if a defendant is unable to offer evidence or is compelled to defend without counsel, not every denial of a request for more time violates the Constitution. Ungar, 376 U.S. at 589. Further, although the court recognizes that defense counsel have significant and time-consuming obligations, it need not afford additional time for preparation at the cost of delaying the prompt disposition of criminal cases. See, e.g., United States v. Stewart, 256 F.3d 231, 245 (4th Cir. 2001) (denial of motion to continue does not violate defendant's Sixth Amendment right to effective assistance of counsel where counsel had over six weeks to prepare and court sought to accommodate the interests of the public and defendants in a reasonably speedy trial).

A party seeking a continuance must show that a delay is necessary for just determination of the case. United States v. Clinger, 681 F.2d 221, 223 (4th Cir. 1982). Based upon the grounds presented, the court does not find that a continuance is warranted with respect to the guilt/innocence phase of this trial, in which the jury selection is not scheduled to begin for almost eight weeks.

Counsel have not alleged that they have been unable to prepare adequately to defend Runyon in this first phase, nor can the court find any reason that this representation would be in any way deficient. Indeed, since defendant Runyon has enjoyed uninterrupted representation by Woodward for over fourteen months, and Woodward has the primary responsibility for the guilt/innocence phase of this trial,[8] the court can comprehend no reason that additional time to prepare for the guilt/innocence phase would be needed.[9]

Additionally, this is the second time that Runyon has moved for a continuance of this trial. On March 13, 2009, the court held a hearing on the motion. At that time, counsel for all parties assured the court that they would be prepared and ready for trial by June 30, 2009, including Woodward and Hudgins. While the court understands that Hudgins -- newly appointed at the time of that hearing -- might not have understood the full scope of the penalty-phase work for which he was responsible, Woodward, who had represented Runyon for

---

[8] As specifically stated in their motion, "[c]ounsel decided to divide the labor so that Woodward would have primary responsibility for the guilt/innocence phase and Babineau would be primarily responsible for the penalty phase." (Mot. to Continue 10.) Hudgins was appointed to replace Babineau. See supra note 4 and accompanying text.

[9] Moreover, the facts and preparation for the guilt/innocence phase of this trial are no more protracted or complicated than other criminal conspiracy trials. In fact, under the allegations of the indictment, there are only three co-conspirators/defendants, one of whom, Catherina Rose Voss, has already pleaded guilty and been sentenced. Also, the defense attorneys are all clearly among the most experienced criminal practitioners in this court.

over a year at that time, was surely aware of defense counsel's preparedness for the guilt/innocence phase of the case.[10]

With respect to the penalty portions of this trial, if such phases are even needed, the court will consider continuing them as appropriate following the guilt/innocence phase. While the Federal Death Penalty Act requires penalty phase hearings to be held "before the jury that determined the defendant's guilt," 18 U.S.C. § 3593(b)(1), it does not specify the time frame in which such hearings must take place. The jury, with appropriate cautionary instructions, may be reconvened at a later time to conduct any necessary penalty phases, if a continuance to complete preparation for those phases is deemed necessary.[11]

### D. Conclusion

Defendant Runyon's Motion to Continue is **DENIED** as to the guilt/innocence phase of the trial, which will go forward as scheduled, with jury selection to begin on June 30, 2009. Should penalty phases be required for Runyon, based on the outcome of the

---

[10] See supra notes 8 and 9 and accompanying text. The court further notes that Woodward has been paid for considerable legal services relating to the guilt/innocence phase of the proceedings. All payments, and supporting documentation, are a matter of record in this case and are subject to disclosure under the provisions of 18 U.S.C. § 3006A(d)(4).

[11] See generally United States v. Stitt, 552 F.3d 345, 352 (4th Cir. 2008), rev'g and remanding, 475 F. Supp. 2d 571 (E.D. Va. 2007) (citing the mandate of 18 U.S.C. § 3593(b) to conduct penalty hearings before the jury that determined the defendant's guilt, as applied to a case in which defendant was found guilty during a trial that took place in 1998).

guilt/innocence phase, counsel may renew the motion for a continuance at that time.[12]

## II. **Motion to Sever**

On April 21, 2009, the United States filed a motion to sever the trials of Runyon and Draven. Responding on April 23, 2009, Runyon indicated that he did not oppose severance. On April 24, 2009, however, defendant Draven responded in opposition to the motion.

This court has considered severing the trial once before. On August 28, 2008, Runyon filed a motion to sever his trial from that of Draven, and raised two arguments in support of severance. First, Runyon claimed that a joint trial would violate his rights under the Confrontation Clause of the Sixth Amendment because the United States planned to introduce at trial certain custodial statements made by Draven that inculpate Runyon. Second, Runyon argued that a joint trial would violate his Fifth Amendment due process rights. While defendant Draven did not oppose a severance, the United States did. In its opposition, filed September 28, 2008, the government represented that it would not seek to introduce in its case-in-chief the post-arrest confession made by Draven to law enforcement officers.

---

[12] As described above, trial will be conducted in three phases. See supra note 3 and accompanying text. The court may consider continuing the latter two phases, applicable only to death penalty-eligible defendants such as Runyon, if the result of the guilt/innocence phase so requires, and the parties make an appropriate showing of need for a continuance at that time.

During a hearing held December 8, 2008, the court addressed Runyon's motion to sever. On the evidence before it, the court found insufficient grounds to warrant separate trials. Additionally, the court noted that the United States' representation that it would not introduce Draven's statement, coupled with any necessary limiting instructions to the jury, would be sufficient to avoid any potential Confrontation Clause issues. Finally, the court did not find any Fifth Amendment problems in holding a joint trial. The court denied Runyon's motion to sever from the bench on December 8, 2008, and memorialized its ruling in an order filed the next day.

### A. The United States' Position

Despite it opposition to Runyon's motion to sever last fall, the United States contends that severance is now warranted. The government argues that the interests of the public, the government, and defendant Draven outweigh an interest in the economy of a joint trial. (Mot. to Sever 5.) Asserting that the "benefits of efficiency and consistency inherent in a joint trial" are overcome by the "strong interest in bringing finality to this case and the crime it involves," the United States seeks to sever the trials of Runyon and Draven. (Id. 4, 6.) The court notes that the government's motion is premised upon the court granting such a continuance. This premise is incorrect. See supra Part I.D. Moreover, Draven now objects to any severance. See infra Part II.B.

### B. Defendant Draven's Objection

Defendant Draven objects to a severance on several grounds. Importantly, Draven's counsel argue that the posture of his case has changed dramatically based on the United States' representations in its opposition last fall, 2008, to Runyon's motion to sever.

As outlined above, in response to Runyon's motion to sever, the government represented that it would not seek to introduce, during its case-in-chief, the post-arrest confession made by Draven to law enforcement officers. This concession "rendered moot" a Motion to Suppress such statement previously made by Draven's defense counsel.[13] For the past seven months, counsel have relied on the government's representation that it would not seek to use this statement against Draven and, as a result, have significantly altered their defense preparation and trial strategy. If severance is granted, defense counsel will be required to pursue the Motion to Suppress anew, and to request a hearing on the same. (Draven Response 3.)[14]

### C. Law and Analysis

"There is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506

---

[13] Draven filed this Motion to Suppress on September 3, 2008. The United States responded to this motion on September 23, 2008, and noted that "in order to facilitate one trial of this matter," it would not use this statement in its case-in-chief. (U.S. Response to Draven Mot. to Suppress 1.)

[14] Alternatively, if severance is granted, Draven argues that the government should be estopped from introducing this statement in its case-in-chief. (Draven Response 3.)

U.S. 534, 537 (1993). Such joint trials promote efficiency and serve the interests of justice by avoiding inconsistent verdicts. Id., quoting Richardson v. Marsh, 481 U.S. 200, 210 (1987).

Federal Rule of Criminal Procedure 14(a) contemplates severance of defendants charged in the same indictment if consolidation "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a); accord United States v. Brugman, 655 F.2d 540, 542 (4th Cir. 1981) ("Barring special circumstances, individuals indicted together should be tried together."). Severance of properly-joined defendants is appropriate only if there is "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539 (further noting that the Federal Rules of Criminal Procedure concerning severance and joinder are designed to promote economy and efficiency, and to avoid multiplicity of trials). Severance is a matter within the sound discretion of the trial court. United States v. Spitler, 800 F.2d 1267, 1271 (4th Cir. 1986).

The court finds no reason to sever the trials of Draven and Runyon. All of the reasons previously articulated by the court on December 8, 2008, still apply; and no new, meritorious reason to justify severance has been offered by the United States. It is a waste of judicial and public resources to hold two trials in this matter involving a conspiracy to commit murder-for-hire and robbery

12

affecting commerce. As the United States acknowledges: "[A] severance could well result in two trials with largely the same evidence." (Mot. to Sever 6.) Additionally, the court finds that severance would work severe prejudice on Draven, as it would yet again significantly alter his counsel's preparation and trial strategy. Neither defendant in this case seeks severance at this juncture. Finally, the government's primary concern, with which this court agrees -- the strong interest in bringing finality to this case and the crime it involves -- is no longer at issue, since the court has denied Runyon's Motion to Continue. See supra Part I.D.

### D. Conclusion

In denying the prior motion to sever trial, the court relied on the well-established principles of joinder and severance outlined above, as well the representations of the parties. These same principles, together with the above reasons, compel the court to deny this second motion for severance, now filed by the United States. Thus, the United States's Motion to Sever Trial is **DENIED**.

---

The Clerk shall forward a copy of this Order to counsel for the parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
United States District Judge

Rebecca Beach Smith
United States District Judge

Norfolk, Virginia
May 7, 2009

13