FILED
AUG 17 2009
CLERK, US DISTRICT COURT
NORFOLK, VA

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA,

v.

DAVID ANTHONY RUNYON,

Defendant.

UNDER SEAL
Criminal No. 4:08cr16

**SEALED**

MEMORANDUM ORDER

In this Motion to Allow Defendant to Supplement His Mental Health Reports (the "Motion"), the defense moves the court to allow supplemental reports from the defendant's expert mental health witnesses James R. Merikangas, M.D. and Allan F. Mirsky, Ph.D. The defendant contends that supplemental reports are necessary to give a more complete and detailed evaluation of the defendant's mental health history, specifically the condition of any brain injuries the defendant may have suffered, following further neurological testing. <u>The defendant further contends that he was unable to complete that testing prior to August 14, 2009, at which time the defendant was to undergo an MRI and PET scan at the direction of Dr. Merikangas</u>.(Def.'s Mot. ¶¶ 4-5).[1]

The Response of United States to Defendant's Motion to Allow Defendant to Supplement Mental Health Reports (the "Response") was

---

[1] On July 30, 2009, the court issued an <u>ex parte</u> Order related to this matter. (Docket #261). Additionally, on August 14, 2009, the tests were completed and the court granted the Motion to Release Test Results to Counsel. (Docket #275).

Copy mailed to counsel for the parties 8/17/09-LXD

278

filed on August 14, 2009, and the United States does not object to the request that Dr. Merikangas and Dr. Mirsky supplement their reports in certain respects. The United States does ask the court to limit the supplements, allowing the defendant's experts to supplement their reports "solely with the results of testing that have not been completed to date . . ." (U.S.'s Resp. to Def.'s Mot. 2). The United States contends that, besides the neurological data which would only be available after the MRI and PET scan, the defendant's experts have had access to all the materials and data necessary to provide an otherwise complete report. Therefore, to allow the defendant's experts to supplement their reports based on that previously accessible data "would be unfair . . ." (Id. at 3).

For the reasons stated herein, the court **GRANTS** the defendant's motion, allowing Dr. Merikangas and Dr. Mirsky to supplement their reports with conclusions that are based upon the results from the neurological testing conducted on the defendant. Further, these supplements may include and/or reference data that were previously accessible to the defendant's experts <u>and</u> to the United States' experts.

I.  **Procedural History**

In this court's Order Regarding Mental Health Evidence on June 16, 2008 the report of any examination by the United States of the defendant's mental health and "the expert report of any examination

initiated by the defendant shall be filed under seal with the Court before commencement of jury selection." (See Docket #65). Subsequently, pursuant to that same Order and pursuant to Federal Rule of Criminal Procedure 12.2, the defendant gave notice of the mental health experts that would examine the defendant. Included in the defendant's Supplemental Notice Regarding Mental Health Experts filed on June 29, 2009, the defendant listed Allen F. Mirsky, Ph.D., and James R. Merikangas, M.D. (See Docket #230).

On July 22, 2009, the court ordered the appointment of James R. Merikangas, M.D. as the defendant's psychiatrist and neurologist. (See Docket #257). <u>Additionally, and most important to the instant motion, the court ordered that the</u> "examinations and report of findings by Dr. Merikangas <u>shall</u> be completed on or before August 6, 2009, and filed under seal with the court and transmitted to the United States on or before August 7, 2009." Id. (emphasis added). The two defense experts at issue in this motion, Dr. Mirsky and Dr. Merikangas, both filed their reports prior to the August 6 deadline.[2] However, as they and the defendant contend that those were only preliminary reports, the defendant now requests that those reports be supplemented, notwithstanding the court's Order of July 22, 2009.

---

[2] Dr. Mirsky conducted his examination on June 26, 2009, and filed his report (the "Mirsky Report") on July 20, 2009. Dr. Merikangas conducted his evaluation on July 29, 2009, and filed his report (the "Merikangas Report") on August 6, 2009.

3

**II. Discussion**

In reviewing the mental health reports that were timely filed by the United States and the defendant, the court finds that each report notes Mr. Runyon's statements regarding past head trauma. Moreover, neither examiner completely ruled out the presence of brain dysfunction, absent more detailed brain imaging examinations which might resolve that question. Consequently, finding such substantial agreement among the doctors on those two issues, the court finds that there is good cause to allow the defendant's experts to supplement their reports in this regard after the further neurological testing of an MRI and PET scan on defendant Runyon.

First, the court finds that the doctors are in substantial agreement that the mental health examinations already administered reveal that the defendant suffered some head trauma in his past. Each of the United States' experts, Raymond F. Patterson, M.D., and Paul Montalbano, Ph.D.,[3] note that the defendant claims he was involved in multiple car accidents, was once "knocked out" by running into a telephone pole while playing football as a five or six year-old boy, and suffered several possible "concussions."[4]

---

[3] Dr. Patterson filed his report (the "Patterson Report") on June 29, 2009. Dr. Montalbano's filed his report (the "Montalbano Report") on June 30, 2009.

[4] (See Patterson Report at 12, 18); (See Montalbano Report at 20).

Additionally, Dr. Mirsky, Dr. Patterson, and Dr. Montalbano note that the defendant allegedly took part in a number of exercises while in the armed services involving grenade explosions that may have also contributed to some head trauma;[5] and, Dr. Merikangas and Dr. Patterson note that the defendant mentioned beatings as a child, particularly an altercation with his biological father where he was potentially beaten or choked to the point of losing consciousness.[6] In its response, the United States does not dispute the fact that its own experts noted the defendant's history in this manner. Thus, the court is unable to find real disagreement on this issue.

Secondly, while the United States' and the defendant's experts do not agree on their ultimate conclusions about Mr. Runyon's cognitive abilities, the court finds substantial agreement among the experts that further testing of the defendant's brain functions, by actually viewing his brain, would allow the expert witnesses to offer the jury a more complete opinion regarding the normalcy, or lack thereof, of the defendant's brain functions. Without those opinions, the jury may be left to speculate as to the significance of the defendant's past head injuries as such may relate to his sentence. This result is unacceptable where there is

---

[5] (See Mirsky Report at 2); (See Patterson Report at 12); (See Montalbano Report at 20).

[6] (See Merikangas Report at 1); (See Patterson Report at 11).

an opportunity for the jury to have this information.

In Dr. Mirsky's report, he states that the defendant's involvement in two serious car accidents and his dealings with exploding grenades while in the armed services produced a number of symptoms consistent with abnormal brain functions; however, the defendant never underwent testing of his brain to determine the actual presence of such abnormalities. (Mirsky Report at 2). Dr. Mirsky concludes that the defendant's performance on some of the tests he administered during examination, specifically the Continuous Performance Tasks (CPT) and the Purdue Pegboard tests, were "clearly indicative of dysfunction in a brainstem-cortical system," and that those symptoms "merit further intrusive neurological investigation." (Mirsky Report at 5-6). Similarly, Dr. Merikangas, who conducted a neurological examination on the defendant, reported that "because of [the defendant's] history of multiple head injuries, beatings in childhood, and his current severe headaches, he requires brain imaging and an [electroencephalogram or EEG]." (Merikangas Report at 2).

In contrast, Dr. Patterson concluded that the defendant's "self-reported history of 'concussions' and short term memory problems do not represent serious or severe impairments suggestive of significant brain damage or dysfunction." (Patterson Report at 24). Similarly, Dr. Montalbano concluded that "while a full neuropsychological battery was not performed, the results of

cognitive testing during this evaluation did not reveal any significant cognitive impairment." (Montalbano Report at 30). Nevertheless, neither of the United States' experts stated that a further examination of the defendant's brain would be futile in discerning whether there was <u>actually</u> any abnormal brain functions. Indeed, Dr. Montalbano, though concluding that the results of his evaluation demonstrated no abnormal brain functions, stated that "<u>only a more detailed neuropsychological, neurological, and biopsychosocial investigation would definitely rule out brain dysfunction</u> . . ." (Montalbano Report at 30)(emphasis added).

While the United States does not substantively disagree that further brain-imaging tests could help resolve the issue of the defendant's potential brain damage, it does raise two issues that must be addressed by the court. First, the United States argues that prior to the August 6, 2009, deadline set by this court, both Dr. Merikangas and Dr. Mirsky had complete access

> to all of the materials reviewed by the experts for the United States, including records from various drug companies as to the studies in which the defendant participated and psychological test results performed to date.

(U.S. Resp. to Def.'s Mot. 3). Yet, the United States continues, neither Dr. Merikangas nor Dr. Mirsky attempted to supplement their reports prior to the August 6 deadline with that data, despite their contentions in their reports that they were awaiting such data to make a more complete report. Consequently, the United States contends that it would be "unfair" to allow the defense

7

experts to supplement their reports with data that was available prior to the August 6 deadline and that the United States would be unprepared to respond to such supplements.

The court cannot agree with the United States that allowing the defendant's experts to supplement their reports by some reliance on previously accessible data would be unfair. In contrast, it would be unfair to prevent the defendant's experts from explaining the previously accessible data by relying upon the newly acquired data to which the United States does not object. Both Dr. Merikangas and Dr. Mirsky stated that they were awaiting the data from the neurological testing before completing full reports. As such, it seems reasonable that without such data, the defendant's experts would have been ill-equipped with the necessary information to make a full and accurate report insofar as their conclusions would rely upon the interrelatedness of <u>all</u> the data. Additionally, it would be reasonable to think that the defendant's experts, based on their medical opinion, could not explain the effects of the defendant's past head trauma or his participation in drug studies, without knowing the results of an MRI and PET scan. In fact, Dr. Mirsky stated as much in his report: "Until such time as the <u>full data</u> are available, this report must be considered as preliminary, only." (Mirsky Report at 6) (emphasis added). Therefore, reference to the previously accessible data may be indispensable to any supplemental report that incorporates the

8

neurological testing.

Moreover, it is unclear to the court why the United States would be prepared to respond to the results of the MRI and PET scans, but not to the previously accessible data. While the former would be new to the case, the latter were known by the United States' experts to the same extent as they were known by the defendant's experts. <u>While the defendant's experts certainly cannot be allowed to introduce new data that were either not previously accessible to the United States (especially if requested by the United States but not produced) or that were not included in the new neurological testing</u>, the defendant's experts can explain or refer to the data already available to both parties in their supplemental reports. Any other result would be unfair and irrational under the current expert reports.[7]

Secondly, the United States requests that it have "ample time" to have its own experts review the results of any new tests and any supplements provided by the defendant's experts. Such a request is reasonable and will be accommodated.[8]

### III. Conclusion

In light of the above discussion, the court concludes that a

---

[7] By its own response, the United States concedes that certain data were already available to its experts and to the defendant's experts. Therefore, for the defendant's experts to use that data now would not be a surprise to the United States.

[8] See <u>infra</u> note 9 and accompanying text.

more detailed evaluation of the defendant's brain functions is necessary to provide an adequate defense and adequate information to the jury. In light of the severe consequences which accompany this phase of the proceedings, the court is less inclined to limit the evidence the defendant may present in mitigation and, thus, potentially deprive the jury of important evidence upon which to base its decision. Therefore, the court further concludes that the defendant's experts, Dr. Mirsky and Dr. Merikangas, may provide supplemental reports to those filed on July 20, 2009, and August 6, 2009, respectively. The supplemental reports may incorporate the underlying or resulting data from the neurological testing on August 14, 2009, as well as any data, underlying or resulting, previously accessible to the defendant's experts <u>and</u> to the United States' experts.

Accordingly, the Court **GRANTS** the defendant's Motion and **DIRECTS** the defendant's experts to file any supplemental reports on or before noon on August 20, 2009.[9] The Clerk shall forward a copy of this Memorandum Order to counsel for the parties.

---

[9] This deadline gives the United States' experts ample time to review the supplemental reports prior to the defendant's presentation of evidence in this phase of trial, as well as prior to the United States' presentation of rebuttal evidence, at which times the issues in the supplemental reports will be ripe for trial testimony. The court specifically notes that the defendant's presentation of evidence, aside from the testimony of Mark D. Cunningham, Ph.D. (<u>See</u> Docket #272), which is unaffected by this Order, is not scheduled to begin before Monday, August 24, 2009.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
**United States District Judge**

REBECCA BEACH SMITH
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August 17, 2009