IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | |
|---|---|
| DAVID ANTHONY RUNYON, <br><br> Petitioner, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | Case No. 4:15-cv-108 <br><br> Initial Criminal No. 4:08-cr-16-3 <br> CAPITAL § 2255 PROCEEDINGS <br> HON. REBECCA BEACH SMITH |

**REPLY IN SUPPORT OF PETITIONER'S MOTION TO COMPEL DISCOVERY**

Petitioner David Anthony Runyon seeks targeted discovery of records in the government's possession, custody, or control pertaining to two government experts, Drs. Daniel Martell and Michael Batipps. These records are subject to disclosure pursuant to the Court's January 27, 2022 Discovery Order, ECF No. 657 ("Discovery Order"), as well as Rule 6 of the Rules Governing Section 2255 Proceedings for United States District Courts.

In its Opposition, the government departs for the first time from its repeated representations throughout these proceedings that no trial-phase records pertaining to either expert exist and that the few records concerning these experts from the habeas phase of the litigation have been produced. The government now does not deny that there may be some such records that it has not disclosed in discovery. *See generally* United States Response to Petitioner's Motion to Compel Discovery ("Opp."), ECF No. 835. Nor could it: the documents Dr. Martell recently provided to Runyon confirm that the government has not complied with its discovery obligations. No longer

1

able to deny the existence of any records relating to these experts, the government instead offers myriad excuses for its failure to turn them over. None withstands scrutiny.

Contrary to the government's claims, Runyon seeks limited discovery of specific categories of information relating to Drs. Martell and Batipps that are directly relevant to Runyon's ineffective assistance of counsel claim and are thus subject to production pursuant to this Court's Discovery Order and Rule 6. Runyon's Motion should be granted, and the government should be directed to produce all records in its possession, custody, or control relating to Drs. Martell and Batipps. In the alternative, this Court should order the government to prepare an accounting of the categories of documents in its possession and to submit such record for *in camera* review so this Court may determine the materials that must be produced.

## ARGUMENT

As set forth in the Motion, the Discovery Order requires the government to produce materials relating to Drs. Martell and Batipps from the time of trial and in relation to the § 2255 proceeding. Disclosure of such materials is also appropriate under Rule 6. The government provides no compelling response to either argument.

I. **Disclosure of Records Pertaining to Drs. Martell and Batipps Is Mandated by the Discovery Order.**

The government offers no explanation for its failure to produce the records Runyon attached to his Motion as Exhibit E, *see* Motion to Compel ("Mot."), ECF No. 829 at 4 (citing Exhibit E, ECF No. 829-5), nor does the government deny that "additional information relevant to" Drs. Martell and Batipps may exist. Opp. at 9.[1] The government instead attempts to cast

---

[1] The government states in its brief that it "does not recall receiving" another document Runyon attached to his Motion, an email designated as ECF No. 829-2. *See* Opp. at 10 n.3. Runyon produced this document to the government via email on February 15, 2023.

2

Runyon's discovery request as a "fishing expedition" for information "far afield from the limited claim of ineffective assistance of counsel that remains before this court," Opp. at 13 (citation omitted), founded on mere "speculation that there must be more 'there' there," *id.* at 10.  But far from mere speculation, Runyon's position that the government likely has additional discovery relating to these experts is grounded in (i) the processes the government ordinarily must follow in order to retain litigation experts and (ii) the fact that the government possessed at least several documents relating to Dr. Martell's trial involvement in the case that it never disclosed.  *See* ECF No. 829 at 4.

1. Runyon seeks narrow, targeted discovery of records relating to Drs. Martell and Batipps from the time of trial and in relation to the § 2255 proceedings that must be disclosed pursuant to the operative Discovery Order.  In correspondence with the government about these records, Runyon's counsel identified specific, limited categories of records pertaining to Drs. Martell and Batipps that they expected would be in the government's possession and subject to discovery: (i) U.S. government forms for the retention of litigation experts; (ii) contracts from the pretrial and postconviction phases; and (iii) communications between Dr. Martell and the government, and between Dr. Batipps and the government in connection with this matter.[2]  *See* ECF No. 829-7 at 3.  These and any similar records in the government's possession, custody, or control are plainly "related to Petitioner's brain injury and mental illness," Discovery Order at 3— indeed, the government does not even attempt to argue to the contrary—and accordingly must be disclosed under the Discovery Order.

---

[2] While other documents may be subject to production pursuant to the government's discovery obligations, Runyon expects the government's records to contain *at least* the categories of documents specified.

3

The government tries to avoid this conclusion by claiming that because Drs. Martell and Batipps "did not testify at trial" or "produce a report to the United States," any records relating to them have "nothing to do with the current evidentiary hearing that is focused on a claim of ineffective assistance of counsel." Opp. at 8. But the government cites no authority for its categorical limitation of its discovery obligation to records of experts who rendered final opinions or testified at trial. And that argument runs counter to the Discovery Order, which mandates the government's disclosure of "*all matters*, should they exist, related to Petitioner's brain injury and mental illness." Discovery Order at 3 (emphasis added).³

The narrow set of records Runyon seeks plainly falls within this obligation. Records relating to Drs. Martell and Batipps, who were retained "to assist and present expert testimony . . . as potential rebuttal experts" to an anticipated mitigation case centered on Runyon's brain damage and mental illness, Opp. at 4, are plainly "relevant to Petitioner's Habeas Claim 6," Discovery Order at 3. For example, Dr. Martell's or Dr. Batipps's discussions with the government (or with each other) about the evidence, or any notes they took about the work of other experts, would show the prejudice of trial counsel's failure to present evidence regarding Runyon's brain damage and mental illness during sentencing. This is so irrespective of whether Dr. Martell or Dr. Batipps formalized such opinions into a report or testimony at trial, because what is relevant to Runyon's ineffective assistance of counsel claim is what would have happened had trial counsel acted effectively and presented evidence regarding Runyon's brain damage and mental illness.⁴ Here,

---

³ The government references a supposed "recommendation" by Runyon's expert, Dr. Merikangas, that Runyon not present a mental health-related mitigation case, *see* Opp. at 4, and alludes to supposedly "false" information provided by Dr. Merikangas, *id.* at 6. Neither point is relevant to this Motion, neither point has been established based on the current record, and both presume facts that have not yet been developed.

⁴ It bears emphasis that Runyon does not claim entitlement to attorney work product or to the government's privileged communications with habeas experts. Runyon has, however, received *no*

4

Dr. Martell has rendered an opinion that Runyon "suffers from longstanding brain dysfunction" and that "[t]he materials that were available" at the time of trial "would have supported the same opinions." *See* Opp. Exhibit 1, ECF 835-1 at 4. Had Runyon's trial counsel adequately investigated and presented evidence of Runyon's brain damage and mental illness, Dr. Martell presumably would have reached and offered the same conclusions that he has provided in these § 2255 proceedings.

The government took a similar position in its response to Runyon's § 2255 motion, stating that "[t]he conclusions of" the government's mental health experts, Drs. Paul Montalbano and Raymond Patterson, "are certainly relevant both to the claimed mental issues Runyon currently faces and to trial counsel's decision not to proceed with a mental health defense beyond that offered by Dr. Cunningham (which was not based on an examination of Runyon)." ECF No. 497 at 51.

2.  The government attempts to turn its affirmative disclosure obligation on its head by claiming that it is *Runyon's* burden to "specifically allege any material errors that would require further discovery," Opp. at 12, and that Runyon can obtain whatever "additional information exists" directly from Dr. Martell, *id.* at 11. But this Court's Discovery Order makes clear that the *government* has the obligation to provide "all matters, should they exist, related to Petitioner's brain injury and mental illness." Discovery Order at 3. It is not Runyon's burden to specify each document he contends must be disclosed, nor could he do so given that the documents at issue are within the government's possession, custody, or control. This is especially true in light of the

---

communications between the government and either expert from the time of trial; *no* forms typically completed by government attorneys to seek authorization to retain litigation experts; nor *any* contracts between the government and either expert from the time of trial, even though the government does not deny that such records exist.

government's repeated prior representations—which have proven incorrect, *see* Mot. at 4–5—that its files contain none of the records sought here.[5]

The government fares no better in arguing that any additional information that exists would "presumably be within Dr. Martell's possession," and thus in Runyon's "custody and control." Opp. at 11. Even assuming Runyon could obtain additional records from Dr. Martell, Runyon has no means to know whether such records represent all discoverable materials relating to Dr. Martell—a nonparty to these proceedings who (unlike the government) is under no obligation to preserve potentially relevant evidence dating back to almost fifteen years ago, and for whom ferreting out such records would pose a significant and non-compensable burden.[6] In any event, the fact that Runyon could potentially obtain additional materials from Dr. Martell does not obviate the government's duty to comply with its discovery obligations. *See, e.g.*, *Med. Protective Co. of Fort Wayne, Ind. v. Am. Int'l Specialty Lines Ins. Co.*, No. 1:13-cv-00357, 2014 WL 4979394, at *3 (N.D. Ind. Oct. 6, 2014) ("[I]t is not a proper objection to discovery to suggest that the other party already has the information or that it is available elsewhere." (citation omitted)); *Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 284 (C.D. Cal. 1996) ("[D]efendant . . . is required to produce documents he has in his possession, custody or control, regardless of whether he believes plaintiff already has those documents.").

3. In a further effort to justify its non-disclosure of records pertaining to Drs. Martell and Batipps, the government attempts to minimize the work each expert performed. *See, e.g.*, Opp.

---

[5] The government's suggestion that it voluntarily provided its disclosures relating to Dr. Martell, Opp. at 11, is belied by the government's January 31, 2023 evidentiary hearing memorandum, which acknowledges that the government's "obligation to disclose any favorable evidence . . . is why the United States identified Dr. Martell's opinions as potentially favorable to the Petitioner." ECF No. 743 at 8.

[6] Moreover, Runyon has no professional contact with Dr. Batipps.

6

at 2 ("[M]erely reviewing the work of other experts does not equate to disclosable information."); *id.* at 10 (Batipps "did not testify at trial, nor did he produce a report to the United States. Therefore, he has nothing to do with the current evidentiary hearing."). The government fails to acknowledge, however, that until filing its Opposition, it had consistently maintained that *no* records concerning Drs. Martell or Batipps existed; the government did not limit its pre-motion representations to *discoverable* records. In any case, the possibility that there may not be voluminous records is no reason to deny discovery to which Runyon is entitled; if anything, it makes compliance easier for the government (which does not raise any undue burden objection).

   4.  The government is wrong in stating (Opp. at 2) that this Court "already addressed a motion for similar relief" in its February 8, 2023, written order, ECF No. 775, addressing portions of Runyon's Second Motion for Discovery, ECF No. 737. Runyon's second discovery motion sought, as relevant here, notes from the government's interviews with Runyon's trial counsel, ECF No. 737 at 6–7, as well as records relating to Dr. Martell, *id.* at 4–6. The Court did not rule on this motion prior to the February 2023 evidentiary hearing, and although the motion was discussed on the record during the hearing, neither the parties nor the Court addressed Runyon's request for documents relating to Dr. Martell. The Court *did* address Runyon's request for the government's trial counsel interview notes, concluding that "[t]o the extent [Runyon] [was] trying to get the notes of the agent, I find that the government has produced what it should." Transcript of Evidentiary Hearing Day 1 at 11:23–25, *Runyon v. United States*, No. 4:08-cr-00016 (Feb. 7, 2023). The Court denied the "motion to the extent [Runyon] [was] trying to get their attorney-client work product." *Id.* at 11:22–23. The Court's subsequent written order (cited by the government, *see* Opp. at 2, 10) incorporates the Court's ruling from the bench: "*[F]or the reasons stated from the bench*, the court DENIED the motion to the extent it sought the United States' attorney-work-product and

7

FOUND that the United States had already produced the remainder of the motion's request." ECF No. 775 at 1–2 (emphasis added).

Thus, there is no basis for the government's claim that this Court addressed Runyon's discovery request regarding Dr. Martell in its February 7 oral ruling and related February 8 written order. In any event, the records Dr. Martell recently provided to Runyon's counsel show that he performed at least 10.75 hours of work for the government prior to the penalty phase—including review of "records" and "test data," *see* Mot. at 2–3; ECF No. 829-5—and provide a renewed basis for Runyon to seek undisclosed documents relating to these experts.

5. The government likewise misstates the record in arguing that the Court "denied" a prior request for "production of recorded communications between the United States and [two other government experts,] Drs. Patterson and Montalbano as well as depositions and documentary discovery from these experts." Opp. at 15 n.4 (citing ECF No. 685). Far from determining that Runyon was "unable to establish the necessary good cause for discovery for these experts who had actually provided reports," *id.*, the Court determined that the government had already satisfied its discovery obligations with respect to two of the three categories of discovery sought (recorded communications between the government and these experts, and the "substance of the conversations" between them, "including any notes and written documents or emails surrounding the meetings with each trial attorney"). ECF No. 685 at 11. The only request the Court denied was Runyon's request to depose the government's experts. *Id.* at 11, 20.

**II.      Disclosure Is Also Appropriate Under Rule 6 of the Rules Governing Section 2255 Proceedings.**

There also is "good cause" for discovery of records pertaining to Drs. Martell and Batipps under Rule 6 of the Rules Governing Section 2255 proceedings. Unlike in *Hirschfeld v. Comm'r of Div. of Parole*, 215 F.R.D. 464 (S.D.N.Y. 2003) (cited in Opp. at 14), where the habeas petitioner

8

sought to depose three individuals without having "establish[ed] that the individuals could provide *any* information which would support the claims in his habeas corpus petition," *id.* at 465 (emphasis added), Runyon has established that records relating to Drs. Martell and Batipps—mental health experts retained by the government to rebut Runyon's own expert—are relevant to his claim of ineffective assistance of counsel for failure to investigate and present evidence of brain damage and mental illness. And though it is not Runyon's burden to "raise a specific claim of missing disclosures," Opp. at 15, Runyon's counsel has proactively identified specific categories of materials expected to be among the government's records and subject to disclosure, *see* ECF No. 829-7 at 3—which is sufficient to establish "'good cause' with specificity," Opp. at 14. In any event, given the government's position that "nothing more remains that would be subject to disclosure," Opp. at 12, it would require minimal effort for the government to search for such records (as it is obligated to do), and the government has raised no particularized claim of burden in doing so.

\* \* \*

Should this Court conclude that a remedy short of requiring immediate disclosure of the requested records is appropriate, Runyon respectfully requests that the Court direct the government to produce the documents at issue for *in camera* review or, in the alternative, produce an inventory of documents in the government's possession. *See, e.g.*, *In re Restraint of Bowman Gaskins Fin. Grp.*, 345 F. Supp. 2d 613, 629 & n.34 (E.D. Va. 2004) (*in camera* review common and appropriate for review of potentially sensitive records, including "to protect government's interest in secrecy," such as grand jury materials or potentially privileged documents (citation omitted)); *Wandji v. Wilkie*, No. 2:18-cv-03036, 2020 WL 13683717, at \*2 (D.S.C. June 1, 2020) (finding *in camera*

9

review appropriate where documents in question were sensitive, and ordering submission of "all responsive documents to the Court along with a log").

## CONCLUSION

For these reasons and those set forth in his Motion, Runyon respectfully requests that this Court grant the Motion to Compel and direct the government to produce all records in its possession, custody, or control related to Drs. Martell and Batipps. In the alternative, this Court should order the government to produce (i) the documents in question for *in camera* review or (ii) at a minimum, an inventory of the categories of documents in the government's possession.

Dated: August 21, 2023

Respectfully Submitted,

/s/ Kathryn M. Ali

Kathryn M. Ali, VSB No. 97966
Ali & Lockwood LLP
300 New Jersey Avenue N.W., Suite 900
Washington, D.C. 20001
Telephone (202) 651-2475
katie.ali@alilockwood.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

/s/ Kathryn M. Ali